## Sheppard et al. v. Koch et al.

(Decided March 21, 1930.)

JOHN WILLIAM HEUVER for appellants.

WILLIAM U. WARREN, WILLIAM A. BURKAMP and LEVI S. SHEPLER for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Lona Sheppard asked to have a deed reformed and, having been unsuccessful in the trial court, has appealed. In the spring of 1925, Miss Jean E. Sandford had in her hands for sale four lots known as the "Scherrer Property." These were lots 7, 8, 9, and 10, they adjoined each other, and their shape and relation to each other will be more easily understood by examining Fig. 1 on the plat attached.

Before this property came into the hands of Miss Sandford the Scherrers had sold a small bit off of the northwest corner to the city of Fort Thomas. The city bought this so as to round off the corner of Taylor avenue and to enable the public to use the street more conveniently.

What was sold was so little as to be negligible, but by referring to either Fig. 2 or Fig. 3 one can see just what it was. The purchase of all this property was a more ambitious program than Mrs. Sheppard was willing to undertake, and Miss Sandford endeavored to find some one who would take a part of the purchase off of Mrs. Sheppard's hands. She saw the defendant Reuben C. Koch and proposed to him to sell him 120 feet off of the west end of this property next to Taylor avenue. What she contends she proposed to sell him is illustrated by Fig. 2. Mrs. Sheppard, of course, did not want to cut off the remainder of her property from the street, and hence she desired to except from the sale a roadway as shown on the map.

Miss Sandford says she furnished Koch a sketch of the property showing that he could redivide the property and get three lots, each 40 feet wide and 120 feet deep, south of the road, and two lots each 45 feet wide and 120 feet deep north of the 10-foot roadway that was to be left for the use of Mrs. Shepherd. Mr. Koch says that sketch given him showed three 40-foot lots south of this roadway and two 40-foot lots north of the roadway.

On March 17, 1925, Koch signed and gave Miss Sandford an agreement, the pertinent part of which is this:

"I Reuben C. Koch, hereby agree to purchase a certain part of the Scherrer property, said part to be purchased by myself to be located on the east side of Taylor Ave., Ft. Thomas and to have a frontage on said street of two hundred and ten feet and to extend one hundred and twenty feet in depth, same to be as per sketch below."

No sketch is now attached to this agreement, and just which sketch is referred to is sharply disputed.

In due season a deed was made by Mrs. Sheppard and her husband to Koch, the description in the pertinent parts of which are:

"Situate in the City of Fort Thomas, county of Campbell and State of Kentucky, and being all of the westerly one hundred and twenty (120) feet of Lots seven (7), eight (8), nine (9), and ten (10) in the Michael Scherrer subdivision, except a very small part of said Lot No. 10 that was conveyed by George Scherrer and others to the city of Fort Thomas, by deed acknowledged November 2, 1922, and recorded in Deed Book No. 136, at page 634, of the records of said county, at Newport.

"Subject to the change made in the street line at the northwesterly corner of said Lot No. 10, the real estate hereby conveyed fronts 221.05 feet, more or less, on the easterly line of Taylor Avenue, and extends back eastwardly 120 feet between the southerly line of said Lot No. 7 and the southerly line of Taylor Avenue and is 231.53 feet, more or less wide in the rear. . . .

"*Said real estate is conveyed to said grantee, however, subject to a perpetual easement hereby retained by said grantors for the advantage, benefit and convenience of the owners, and occupants of the dwelling house on that part of said Lots Nos. 7, 8, 9, and 10 not conveyed to said grantee.*

"*Said easement is for ingress and egress from said dwelling house over and upon a driveway or road ten (10) feet in width extending from the easerly line of Taylor Ave., over said Lot No. Nine (9) to the rear line of the real estate conveyed to said grantee by this Deed.*"

These italics are ours, and we have used them to show of just what Mrs. Sheppard is complaining.

This 10-foot roadway is the storm center of this controversy. It is the contention of Mrs. Sheppard this roadway was in no sense sold to Koch, but was specifically excepted from the sale, and that the title to it was to remain in her, and she seeks by this action in equity to have this deed so reformed as to express what she contends was the true intention of the parties. She seeks this reformation upon the grounds of mutual mistake. Koch resists the proposed reformation; he contends this deed expresses the true intent and real agreement of the parties, and that no such showing is made as is necessary to warrant reformation.

To succeed, Mrs. Sheppard must establish by clear and convincing evidence that this deed as written does not express the things upon which they had mutually agreed. She must not only establish the making of a mistake, but the mutuality of that mistake.

"By mutuality is not meant that both parties must agree on the hearing that the mistake was in fact made, but the evidence of the mutuality of the mistake must relate to the time of the execution of the instrument, and show that at that particular time the parties intended to say a certain thing and by mistake expressed another. The mistake having been shown to be common and reciprocal, it is of no consequence that the instrument was read by the parties at the time of signing." 34 Cyc. 919.

"The rule requiring 'clear and convincing proof' necessarily does not mean that there should be no contrariety in the proof, for, if it did, the occasions for the application of the remedy would be rare indeed." Irwin v. Westwood, R. E. & D. Co. et al., 200 Ky. 760, 255 S. W. 546, 548.

We have carefully considered the three large volumes of evidence, the substance of which is this:

In March, 1925, the executors of George Scherrer made a contract with Miss Sandford by which they agreed: "To sell to Lona A. Sheppard on or before April 15th, 1925, the George Scherrer property known as lots, *7, 8, 9, and 10* 220 feet (about) on Taylor Avenue, and Reservoir Place." That part in italics was not in this contract originally; it was inserted by the scrivener when he wrote the deed in controversy.

Miss Sandford at once began an effort to sell a portion of this property. That part adjoining the east side of Taylor avenue was the most valuable. She interested Reuben Koch. There are five maps or sketches in this record. There is no material difference between any of them and the one shown on our map as Fig. 3. Two sketches were filed on behalf of Koch and three on behalf of Mrs. Sheppard.

It is Koch's contention that both he and Miss Sandford then thought this property had a frontage on Taylor avenue of only 210 feet all of which he bought, and he relies upon his contract. This contract written by Koch does not agree with the deed in controversy. The contract calls for a Taylor avenue frontage of 210 feet; the deed calls for a Taylor avenue frontage of 221.05 feet. The deed calls for an easement 10 feet wide; the contract says nothing about an easement. Hence it is evident both of the papers cannot represent the true agreement of the parties, and perhaps neither does so.

The conclusion is inescapable that this 10 feet was never intended to be sold. Excepting it from the sale, we find Koch contracted for a frontage of 210 feet; he got 211.05. He was to have 120 feet south of the road and he gets that, he was to have 90 feet north of the road and he gets 91.05, and this leaves 10 feet the absolute title to which should have been left in Mrs. Sheppard, whereas the deed only gives her an easement.

Miss Sandford says she instructed the scrivener to make this 10-foot roadway like the roadway in the Morlidge deed, another transaction with which they were all familiar and where the roadway was excepted from the conveyance. The deed was not so written, and when the deed was read over to Mrs. Sheppard and Miss Sandford, they made an objection when the frontage of 221.05 was reached, and their evidence is that the scrivener rather impatiently told them not to make objections, that he was taking care of the roadway later on in the deed. Further in the deed he read the recital relative to an easement, and another objection was made; but the scrivener assured these women he had fixed it right, and as Mrs. Sheppard had more confidence in him than in Miss Sandford, she signed the deed.

It is very striking that this is the first point in all these negotiations where the word "easement" appears.

We are convinced it should not have appeared here. Having reached this conclusion, the next question is: What is to be done? Mrs. Sheppard would ordinarily be entitled to have this deed reformed and to have the title to this 10 feet reinvested in her, but some other rights and equities have intervened, that make it necessary to deny to her the exact relief to which she would otherwise be entitled.

Koch sold to the defendant Schwertman a 45-foot lot and built for him a house upon it. The southern line of this 45-foot lot, instead of being given as on the north side of this 10-feet roadway, was placed in the center of it.

Koch conveyed this 5 feet subject to the restrictions contained in the deed from Mrs. Sheppard to Koch. Koch also imposed on the 5 feet of this roadway he conveyed to Schwertman an easement fŏr the benefit of the Koch property south of the roadway, and he conveyed to Schwertman an easement upon the southern half of this roadway for the benefit of the Schwertman property.

Koch built for Schwertman a house on this property so conveyed him, and through some inadvertence he so located it that a portion of it was built in this roadway. That was discovered during the course of this litigation, and Koch made a deed to Schwertman to correct it, but that deed while testified about is not in this record. A portion of this house impinges upon and is situated in this roadway 18⅛ inches.

"No reformation may be had to the detriment of intervening rights of (innocent) third parties." See Swiss Oil Corporation v. Hupp, 232 Ky. 274, 22 S. W. (2d) 1029, 1031, and cases there cited.

Koch still owns the property south of this roadway. According to all the sketches in this record, the center line of this roadway was 125 feet from the southern line of lot No. 7. In view of Koch's having wrongfully built this Schwertman house so that it encroaches on this roadway 18⅛ inches, the court should have directed a surveyor to go upon this property and to begin at a point 123 feet 5⅞ inches from the southern line of lot No. 7 in the Scherrer division, and to run a line parallel therewith until it strikes the western line of Mrs. Sheppard's property and to mark off a roadway 10 feet in width (5 feet on each side of this line). The court should then require Koch to convey, or have a commissioner convey for him, to Mrs. Sheppard in fee the property from

the southern boundary of the roadway thus established to the center line of the roadway as it is, that is, to convey in fee to Mrs. Sheppard a strip of land 6 feet 6⅛ inches wide and 120 feet long. In other words, to move this roadway south 18⅛ inches. This strip (in fee) added to the 3 feet 5⅞ inches unencroached easement over the Schwertman property will give Mrs. Sheppard a roadway 10 feet wide. Mrs. Sheppard says in her brief this will satisfy her. Inasmuch as Mrs. Sheppard in her brief consents thereto and Koch has erected garages and other structures so opening as to depend on this roadway for outlet, this 6 feet 6⅛ inch strip may be subjected to an easement for ingress and egress in favor of Koch and the property south thereof now owned by him. Of course, nothing herein can affect the easement of Schwertman, which shall be extended to and enjoyed by him in such relocated roadway. The judgment is reversed, with directions to enter judgment accordingly.

To properly index a record, the clerk should give the name of each witness called, then the pages whereon may be found the beginning of his examination, cross-examination, redirect examination, recross-examination, etc. That was not done in this record. There were 52 different pages in this record to be indicated, yet the clerk contented himself by saying; "Depositions for plaintiff 37," and, "Depositions for defendant 211." That was not enough. See Com. v. Campbell, 231 Ky. 386, 21 S. W. (2d) 474. He charged Mrs. Sheppard $113.25 for this record, and because he failed to make a proper index, he shall repay her $13.25.